UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACOB ROSA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-00187-SEP |
| | ) |
| MITEK, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. Doc. [43]. The Motion is fully briefed and ripe for review. For the reasons set forth below, the Motion is granted.

### FACTS[1] AND BACKGROUND

Plaintiff Jacob Rosa brings this four-count action against his former employer, MiTek, Inc., in the aftermath of his termination. *See* Doc. [31]. In Count I, Rosa alleges that MiTek violated the Emergency Paid Sick Leave Act (EPSLA). *Id.* ¶¶ 22-32. In Count II, he claims that MiTek wrongfully interfered with his rights under the Family Medical Leave Act (FMLA). *Id.* ¶¶ 33-47. In Count III, he alleges that MiTek unlawfully retaliated against him in violation of the FMLA. *Id.* ¶¶ 48-54. And in Count IV, he claims that MiTek discriminated against him in violation of the Missouri Human Rights Act (MHRA). *Id.* ¶¶ 55-65. MiTek moves for summary judgment on all counts of Rosa's Amended Complaint. *See* Doc. [43].

MiTek, Inc. is a global company providing services and products for the building industry. Doc. [52] ¶ 1. According to MiTek's employee management system, "Workday," it had 2,039 employees in the United States in October 2020.[2] *Id.* ¶ 4.

---

[1] The facts are drawn from Defendant's Statement of Uncontroverted Material Facts, Doc. [45], Plaintiff's Response, Doc. [52], and Defendant's Response to Plaintiff, Doc. [55].

[2] MiTek submits a declaration by its Human Resource Information System Manger, Timothy O'Donnell, and a copy of data from the Workday system indicating that MiTek's U.S. employee count was 2,039 on October 8, 2020. Doc. [45-1]. Rosa objects that O'Donnell "is not qualified to testify as to . . . someone's status as an employee" versus an independent contractor because that is "a legal conclusion that Defendant is in an employment relationship with certain individuals." Doc. [52] ¶ 4. As MiTek points out, however, O'Donnell's declaration merely "states the basis for how MiTek characterizes an

1

In May 2014, MiTek hired Rosa as an employee at its production facility in St. Charles, Missouri. *Id.* ¶ 18. On October 4th, 2020, during the COVID-19 pandemic, Rosa sent a text message to MiTek's Human Resources Manager, Amber James, informing her that his girlfriend's father had tested positive for COVID-19. *Id.* ¶ 49. Rosa informed James that his girlfriend was not feeling well and asked James if it was okay for him to come into work the next day. *Id.* ¶¶ 50-51. James responded that Rosa could come to work unless his girlfriend tested positive or he was in direct contact with his girlfriend's father. *Id.* ¶ 51. Rosa explained to James that his girlfriend had been in direct contact with her father for a couple of hours on the day that her father was not feeling well. *Id.* ¶ 52. James again informed Rosa that he could come into work unless his girlfriend tested positive, or he was in direct contact with his girlfriend's father. *Id.* Rosa responded by confirming that he would arrive for his shift the next day. *Id.* ¶ 53. At no point in the conversation did Rosa tell James that he was experiencing COVID-related symptoms. *Id.* ¶ 54.

On October 5th, Rosa went to work at the St. Charles MiTek facility. *Id.* ¶ 55. After starting his shift, Rosa informed his supervisor, Jim Smith, that he was "not feeling good today, as I told Amber [James] I think I may have been exposed to COVID." *Id.* ¶ 56. Smith asked Rosa why he came to work and told him, "if you are not feeling good go home." *Id.* ¶¶ 57-58. While at the MiTek facility, Rosa told his coworkers, "Stay away from me I think I have COVID. I don't know why I'm here." *Id.* ¶ 59. MiTek's Human Resources Director, Diane Hoover, sent Rosa home and instructed him to get tested for COVID-19. *Id.* ¶ 61. Shortly after Rosa left work, James texted him to clarify whether his girlfriend had tested positive. Rosa responded that his girlfriend's "whole family tested positive," so James requested that he send her a picture of his and his girlfriend's COVID-19 test results once they received them. *Id.* ¶ 62.

Later that day, Rosa and his girlfriend were tested for COVID-19. *Id.* ¶ 63. On October 7th, Rosa texted James with a picture of his and his girlfriend's positive COVID-19 test results.

---

individual as an employee or independent contractor in its Workday system," Doc. [55] ¶ 4, and then states how many employees Workday shows MiTek had in October 2020. *See* Doc. [45-1] ¶¶ 10-12. Those are not legal conclusions; they are facts that are very plausibly within the personal knowledge of MiTek's Human Resource Information System Manager, and Rosa offers no evidence to counter them. The objection is therefore overruled, and the Court treats the facts as admitted. *See* E.D. Mo. L.R. 4.01(E) ("All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless *specifically controverted* by the opposing party." (emphasis added)).

2

*Id.* ¶ 74. Other than that picture, there is no evidence that Rosa communicated with anyone from MiTek from the time he left the facility on October 5th until his termination on October 8th. *Id.* ¶¶ 75, 85.

MiTek maintained an FMLA Policy during Rosa's employment, which requires all employees needing FMLA leave to give notice to their supervisor and the Human Resources (HR) department that they planned to be absent due to FMLA leave, unless they were medically incapable of doing so. *Id.* ¶¶ 86, 88-89, 92. MiTek's third-party claims administrator for FMLA claims, Prudential Financial, Inc., processes all FMLA leave applications for MiTek employees. *Id.* ¶¶ 90-91. Once an eligible MiTek employee communicates the need for FMLA leave to MiTek's HR department, an HR representative provides the employee with Prudential's contact information for review and potential approval of the employee's FMLA leave request. *Id.* ¶ 93. MiTek does not approve or deny FMLA claims but directs employees to Prudential. *Id.* ¶ 94. Once the employee's FMLA leave claim is pending with Prudential, the employee must notify MiTek through its "Workday" system that the employee may use FMLA leave. *Id.* ¶ 95.

Rosa did not discuss FMLA leave with MiTek's HR department, nor did he request FMLA leave from any MiTek employee after receiving his positive COVID-19 test result on October 7th. *Id.* ¶¶ 96-97. At no point during Rosa's employment with MiTek did Rosa request or take FMLA leave. *Id.* ¶ 98.[3]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3] Rosa either objects to or denies ¶¶ 93 to 99 of Defendants' Statement of Uncontested Material Facts, but his denials fail to specifically controvert the facts asserted, and his objections to ¶¶ 93 and 98 are meritless. *See* Docs. [52] ¶¶ 93-99; [55] at 11-13. Therefore, the allegations in ¶¶ 93 to 99 are deemed admitted. E.D.Mo. L.R. 4.01(E).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

## DISCUSSION

**I.      Count I:  Rosa makes no case that MiTek was a "covered employer" under the EPSLA.**

In his Amended Complaint, Rosa alleges that MiTek violated EPSLA when it failed to provide Rosa with paid sick leave and terminated his employment, after he informed MiTek of his positive COVID-19 test. EPSLA was enacted on March 18, 2020, as part of the Families First Coronavirus Response Act. *See* Pub. L. No. 116-127, §§ 5101-5111, 134 Stat. 178, 195-201 (2020) (expired Dec. 31, 2020). It required "covered employers" to provide their employees with certain paid sick leave policies because of a COVID-19 diagnosis or quarantine. § 5102. A "covered employer" is "any person engaged in commerce or in any industry or activity affecting commerce that . . . in the case of a private entity or individual, employs fewer than 500 employees." § 5110(2)(B)(i)(I)(aa). EPSLA also adopted the Fair Labor Standards Act's definition of "employee," which is "any individual employed by an employer." § 5110(1)(A)(i) (citing 29 U.S.C. § 203(e)).

MiTek asserts that it was not a covered employer under EPSLA because on October 8, 2020, MiTek employed over 2,000 employees in the United States alone—well in excess of the 500-employee statutory limit. MiTek points out that it separately categorized its employees and

4

independent contractors, such that MiTek's employee count of 2,039 excludes independent contractors.  Doc. [45] ¶¶ 4, 18.

Rosa has not contested MiTek's definition of "employee," nor has he offered any evidence controverting MiTek's evidence that it had more than 500 employees at the relevant time.  *See supra* note 2.  Rosa has thus failed to "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  As a result, MiTek is entitled to summary judgment as to Count I.

## II. Count II:  Rosa cannot establish a prima facie case for FMLA interference because he failed to give MiTek proper notice of his FMLA request.

In Counts II and III, Rosa alleges that MiTek interfered with his right to take FMLA leave and wrongfully terminated his employment when he claims to have sought leave due to his positive COVID-19 test.  The FMLA provides eligible employees with up to twelve weeks of unpaid leave during a twelve-month period for "a serious health condition" and makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]."  29 U.S.C. §§ 2612(a)(1)(D), 2615(a)(1).  "A violation of this provision creates what is commonly known as the interference theory of recovery."  *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005); *see also Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (referring to FMLA interference claims as "entitlement" claims because under them "an employee claims the denial of a benefit to which he is entitled under the statute").

To establish a *prima facie* case for FMLA interference, Rosa must prove:  (1) that he "was eligible for FMLA leave"; (2) that MiTek "was on notice of [his] need for FMLA leave"; and (3) that "the company denied [him] benefits to which [he] was entitled" under the FMLA.  *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 548 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 769 (2022).  MiTek argues that Rosa cannot establish the second element of his *prima facie* case: that MiTek was on notice of Rosa's need for FMLA leave.  The Court agrees that Rosa's FMLA interference claim fails on the second element.  *See Chappell v. Bilco Co.*, 675 F.3d 1110, 1116 (8th Cir. 2012) ("A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave . . . .").

5

An employee provides adequate notice to the employer "when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000) (internal quotation marks omitted). The Eighth Circuit has recognized "a rigorous notice standard for employees seeking to use FMLA leave for absences." *Brown v. Kansas City Freightliner Sales, Inc.*, 617 F.3d 995, 997 (8th Cir. 2010). "At a minimum, an employee must give 'at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave.'" *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 944 (8th Cir. 2003) (quoting 29 C.F.R. § 825.302(c)). "While the employee does not have to mention FMLA by name, the employee has an affirmative duty to indicate both the need and the reason for the leave." *Id.*

As part of the employee's requirement to provide notice, "[t]he employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 472 (8th Cir. 2007). Under the FMLA, a "serious health condition" is any "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). "[U]nless complications arise, the common cold, [and] the flu . . . are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. § 825.113(d).

Rosa argues that he provided MiTek with notice of his need for FMLA leave on three occasions: (1) on October 4th, 2020, when he texted Amber James that his girlfriend's father tested positive for COVID-19 and that his girlfriend was experiencing COVID-19 symptoms; (2) on October 5th, 2020, when he told his supervisor, Jim Smith, and co-workers that he thought he had COVID-19 and left work to get tested; and (3) on October 7th, 2020, when he sent a picture of his positive COVID-19 test result to James. Regarding the first occasion, Rosa's text to James stating that his girlfriend was exposed to COVID-19 and was symptomatic did not provide MiTek with "enough information to put [MiTek] on notice that [Rosa] may be in need of FMLA leave." *Thorson*, 205 F.3d at 381. In that text, Rosa neither told James that he was exposed to COVID-19 nor informed her that he was experiencing symptoms himself. *See Evans*,

6

996 F.3d at 549-50 (plaintiff's employer "was not required to guess whether [plaintiff] needed FMLA leave when she called in; she was required to affirmatively invoke the FMLA.").

The second instance, when Rosa informed his supervisor and co-workers on October 5, 2020, that he thought he had COVID-19 and then left work, also failed to provide MiTek sufficient notice that Rosa needed FMLA leave. Like Rosa's text to James on October 4th, Rosa did not inform his supervisor that he needed leave. *See Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999) ("The employee need not specifically mention FMLA leave, *but must state that leave is needed*, and the statement should be made within one or two business days.") (emphasis added). Rosa told MiTek only that he was not feeling well and that he *thought* he *might* have COVID-19. That is not sufficient to put MiTek on actual notice. *See Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 987, 994 (8th Cir. 2005) (finding that plaintiff did not provide adequate notice of FMLA leave when he did not "give any information about what might be wrong with him" and employer reported he was absent due to an "unknown illness"). Nor could it have put MiTek on "constructive notice." The Eighth Circuit has specifically "decline[d] to create a constructive-notice exception to an employee's 'affirmative duty' to notify his or her employer of the need for leave that might be FMLA-qualifying." *Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 788 (8th Cir. 2009) (internal citation omitted).

As for the third instance, Rosa contends that he provided MiTek notice of his need for FMLA leave when he sent a picture of his positive COVID-19 test result to Amber James on October 7, 2020. The Eighth Circuit has rejected arguments that a diagnosis itself, without information specifying a "serious health condition," constitutes sufficient notice that an employee needs FMLA leave. *See Rask*, 509 F.3d at 472 (a diagnosis of depression, absent details that employee had an FMLA-qualifying "serious health condition," was inadequate notice); *Woods*, 409 F.3d at 986, 992-93 (two doctor's notes advising employee to remain off work provided inadequate notice because the notes gave no information indicating that employee's absence was due to a serious health condition). And despite the unique circumstances of the COVID-19 pandemic, federal courts have continued to enforce the notice requirement by requiring that employees requesting FMLA leave based on COVID-19 present evidence that their COVID-19 diagnosis constitutes a "serious health condition involving continuing treatment by a health provider." 29 C.F.R. § 825.115; *see, e.g.*, *Nuttall v. Progressive Parma Care Ctr., LLC*, 2022 WL 2952586, at *2 (6th Cir. July 26, 2022) (plaintiff did not

provide notice of FMLA leave when she was exposed to COVID-19 and required to quarantine for two weeks because she gave employer "no indication that she sought time off because she had a serious health condition that incapacitated her"); *Price v. Ajinomoto Foods N. Am., Inc.*, 2021 WL 5068530, at *2 (N.D. Miss. Nov. 1, 2021) (granting summary judgment against plaintiff who failed to mention FMLA leave when reporting positive COVID-19 test result to employer); *Gray v. WinCo Foods, LLC*, 2022 WL 2899277, at *18 (E.D. Tex. June 6, 2022) (collecting cases).

Rosa cites *Clinkscale v. St. Therese of New Hope*, 701 F.3d 825 (8th Cir. 2012), as support for his argument that the positive COVID-19 test result constituted sufficient notice. In *Clinkscale*, the Eighth Circuit found that there was a genuine dispute as to whether notice was sufficient where, the morning after departing work in distress, plaintiff provided a doctor's note "alerting [her employer] of [her] condition and need for medical leave," in response to which her HR department provided her with FMLA forms. *Id.* at 826-28. Rosa claims to be similarly situated to Clinkscale because he likewise "gave a doctor's note as notice of his request for FMLA leave." Doc. [51] at 6. But unlike the plaintiff in *Clinkscale*, Rosa points to only a test result, devoid of any mention of leave, and no evidence of any FMLA-related follow-up on the part of either Rosa or MiTek. Therefore, unlike in *Clinkscale*, there is insufficient evidence in the record before this Court to support an inference that MiTek was on notice of Rosa's need for FMLA leave.

That conclusion finds additional support in the Eighth Circuit's decision in *Evans v. Cooperative Response Center, Inc.*, 996 F.3d 539 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 769 (2022). In *Evans*, the plaintiff was denied leave because she did not follow her employer's two-step FMLA leave procedure, which required her to call her employer's HR department and the third party leave administrator. *Id.* at 549. "FMLA regulations provide that an employee who fails to 'comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances,' may have her 'FMLA-protected leave . . . denied.'" *Id.* (quoting 29 C.F.R. § 825.303(c)). Because the plaintiff did not follow her employer's notice requirements, the Eighth Circuit affirmed summary judgment for the employer. *Id.* at 551.

Like the plaintiff in *Evans*, Rosa failed to satisfy MiTek's requirements for requesting FMLA leave. Rosa never submitted FMLA paperwork to MiTek, nor did he have any

8

discussions with MiTek about FMLA leave.  According to MiTek's records with its FMLA third party administrator, Prudential, Rosa never sought FMLA leave at any point during his employment with MiTek.  Rosa admits that he did not have a discussion with any MiTek employee, including MiTek's HR Department, about needing FMLA leave after he left MiTek's facility on October 5, 2020.  He likewise has not offered any evidence that he communicated with MiTek or Prudential about FMLA leave, or that he entered the Workday system to select the option for FMLA to notify MiTek of his intent to use FMLA leave.  Therefore, it is undisputed that he did not follow MiTek's notice requirements for FMLA leave.

Because Rosa presents no evidence that he satisfied the FMLA's "rigorous notice standard," *Brown*, 617 F.3d at 997, he cannot make a *prima facie* case for FMLA interference, and MiTek is entitled to summary judgment as to Count II of the Amended Complaint.

**III.     Count III:  Rosa cannot establish a prima facie case for FMLA "retaliation" or discrimination because he did not engage in activity protected under the FMLA.**

In Count III, Rosa alleges that MiTek terminated his employment for exercising his FMLA rights when he purportedly sought FMLA leave due to his positive COVID-19 test.  Even though Rosa designates Count III as an FMLA "retaliation" claim, he cites 26 U.S.C. § 2615(a)(1), the textual basis of which supports an FMLA "discrimination" claim.  An FMLA retaliation claim arises under 29 U.S.C. § 2615(a)(2) when "an employee opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012).  When that occurs, an "employer may not for that reason take adverse action against the employee who is engaged in the opposition." *Id.*

An FMLA discrimination claim, on the other hand, "arises when an employer takes adverse action against an employee because the employee exercise[d] rights to which he is entitled under the FMLA." *Id.*  Rather than preventing the employee from receiving FMLA benefits, in a discrimination claim, "it is alleged that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment." *Id.* Here, the record indicates that Count III is an FMLA discrimination claim rather than an FMLA retaliation claim.  Nothing in the record shows that Rosa opposed some practice made unlawful under the FMLA.  Instead, Rosa claims that he was terminated due to his attempt to exercise his

9

rights under the Act.  Rosa confirms as much in his Amended Complaint.  *See* Doc. [31] ¶ 51 ("Plaintiff suffered adverse employment action for attempting to exercise his FMLA rights in that he was terminated once he received his COVID-19 diagnosis.").  The Court will therefore treat Count III as an FMLA discrimination claim.

The Eighth Circuit "has considered FMLA discrimination claims under the *McDonnell Douglas* burden-shifting framework that is applied in Title VII cases." *Pulczinski*, 691 F.3d at 1007; *see also Hasenwinkel v. Mosaic*, 809 F.3d 427, 433 (8th Cir. 2015).  "To establish a *prima facie* case of FMLA discrimination, an employee must show:  (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." *Pulczinski*, 691 F.3d at 1007.

Rosa cannot establish a *prima facie* case of FMLA discrimination because he cannot show that he engaged in protected activity under the FMLA.  As explained above, Rosa never sought FMLA leave after he left the MiTek facility on October 5, 2020, to get tested for COVID-19.  Rosa offers no evidence that he ever communicated with MiTek about FMLA leave or submitted any FMLA paperwork.  MiTek's FMLA third party administrator, Prudential, has no record of Rosa ever requesting or taking FMLA leave while employed by MiTek.  And Rosa has not offered any evidence that he entered the Workday system to notify MiTek of his intent to use FMLA leave.  Because Rosa never attempted to take FMLA leave, he did not engage in protected activity under the FMLA and thus cannot establish a *prima facie* case for FMLA discrimination.  Therefore, MiTek is entitled to summary judgment as to Count III as well.

### IV. Count IV:  Rosa does not oppose MiTek's motion for summary judgment as to Rosa's whistleblower claim.

In Rosa's Amended Complaint, he alleges that MiTek terminated him for reporting discrimination, in violation of the public policy laid out in the Missouri Human Rights Act and Title VII.  Doc. [31] ¶ 65.  MiTek moved for judgment on the pleadings on this count, Doc. [37], and later moved for summary judgment.  Doc. [43].  Because Rosa does not oppose MiTek's motion for summary judgment on this count, *see* Doc. [51] at 2, summary judgment is granted as to Count IV, and the motion for partial judgment on the pleadings is denied as moot.

10

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [43], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings, Doc. [37], is **DENIED as moot**.

A separate Judgment accompanies this Memorandum and Order.

Dated this 23rd day of September, 2022.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE